<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY GEORGES, | No. 23cv5168 (EP) (AME) |
| Plaintiff, | |
| v. | |
| BALAZS GALDHI, MD, et al., | **OPINION** |
| Defendants. | |

**PADIN, District Judge.**

Plaintiff Ashley Georges, a state prisoner in South Woods State Prison, New Jersey, brought an action against the East Jersey State Prison ("EJSP") and various entities and officials for alleged violations of 42 U.S.C. § 1983; the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 et seq. ("NJCRA"); and the New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 et seq. ("NJTCA"). D.E. 7 ¶ 1 ("Amended Complaint" or "Am. Compl.").

As Plaintiff is a prisoner seeking redress from a government entity or employee, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915A(a)-(b); *see also Shakouri v. Davis*, 923 F.3d 407, 410 (5th Cir. 2019) (applying § 1915A(b)(1) to prisoner civil rights action removed from state court).

For the reasons below, the Court will **GRANT** the IFP application. The Court will **DISMISS** Claim One in its entirety. 28 U.S.C. § 1915A(b)(1). The Court will **DISMISS** *with*

*prejudice* the Section 1983 and NJCRA claims against the NJDOC and EJSP.  28 U.S.C. § 1915A(b)(1)-(2).  Claims Two and Three shall **PROCEED** against Balazs Galdhi only.

## I.      BACKGROUND

According to the Amended Complaint, Plaintiff was injured during his recreation time at EJSP on July 4, 2021.  Am. Compl. ¶ 4.  He was sent to the medical department, but no physician was available until July 6 due to the holiday.  *Id.* ¶ 5.  Physician Lynch examined Plaintiff and concluded he required transport to an outside hospital.  *Id.* ¶ 6.  Plaintiff was taken to the University of Medicine and Dentistry of New Jersey ("UMDNJ") Hospital in Newark, New Jersey, where he was designated as a "forensic patient" pursuant to the agreement between New Jersey Department of Corrections ("NJDOC") Commissioner Victoria Kuhn and the UMDNJ Director.  *Id.* ¶¶ 8-11.

APN Frimpong, RN Zuena, and an unnamed supervisor ("Jane Doe 1") treated Plaintiff at UMDNJ.  *Id.* ¶¶ 12-14.  Supervisor Doe told Plaintiff that due to UMDNJ Hospital's and NJDOC's policies, "Plaintiff would not have the same rights afforded to other patients outlined in the UMDNJ's Patients Bill of Rights."  *Id.* ¶ 14.  Plaintiff asked to contact his family so that they could cover the cost of treatment and was denied.  *Id.*  Plaintiff was told that necessary tests such as an MRI were restricted without NJDOC approval because he was a forensic patient.  *Id.* ¶ 15.

Plaintiff received a blood test that determined his enzyme required a Saline IV "to dilute the enzymes from his blood to eliminate potential complications with his kidneys."  *Id.* ¶ 17.  He was later examined by an unidentified orthopedist, who "hurled [an] arm sling" at Plaintiff when he "expressed his dissatisfaction with her lack of empathy and professionalism towards his treatment" and "requested to speak with her supervisor."  *Id.* ¶ 18.  "Plaintiff was advised that he would be scheduled for a follow up to see the specialist [Dr. Galdhi], on July 28, 2021, within three weeks to determine what further treatment would be provided.  Because of Plaintiff['ʼ]s

repeated complaints, [Dr. Galdhi] refused to reschedule Plaintiff for non-medical purposes." *Id.* ¶ 20. Plaintiff had the follow-up appointment in October 2021, where it was determined that an MRI was necessary and would be scheduled "at the convenience of [Dr. Galdhi]." *Id.* ¶ 22. Plaintiff alleges that Dr. Galdhi refused to schedule him for an MRI due to Plaintiff's complaints and NJDOC and UMDNJ's policies. *Id.*

Despite Plaintiff's treatment requests, he was not scheduled for an MRI until June 2022. *Id.* The MRI took place at Saint Francis Medical Center, not UMDNJ. *Id.* He had a telemedicine consultation at "Northern State Prison Medical Department, with Orthopedic Dr. Shakir. Plaintiff was then advised by Dr. Shakir that his MRI determined that he did suffer a tear to his left pectoral muscle." *Id.* ¶ 23.[1] Dr. Shakir then told Plaintiff "that he mistakenly read the wrong chart and that his consultation was regarding the procedure for Plaintiffs left elbow surgery, which was scheduled for September 28, 2022." *Id.* ¶ 24. Plaintiff asked about his left pectoral injury and was told that "UMDNJ was ultimately responsible for the treatment of that particular injury." *Id.* ¶ 25.

## II.    PROCEDURAL HISTORY

Plaintiff filed a Complaint in the New Jersey Superior Court, Law Division, Civil Part, Essex County. D.E. 3-1. On August 18, 2023, Defendant Commissioner Kuhn removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. D.E. 1. Plaintiff filed the Amended Complaint on December 1, 2023, against Kuhn, the NJDOC, the UMDNJ Director, EJSP, Physician Barrington Lynch, APN Josephine P. Frimpong, RN Noella Zuena, Jane Doe 1, Dr. Balazs Galdhi, and John and Jane Does. Am. Compl. He subsequently filed an application to proceed *in forma pauperis* ("IFP"). D.E. 10 at 11.

---

[1] Plaintiff does not name Dr. Shakir as a defendant.

### III.    LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires a court to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  The Court must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  § 1915A(b).  This action is subject to *sua sponte* screening for dismissal under section 1915A because Plaintiff is a prisoner seeking redress from government employees and entities.

To survive a *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim."  *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).  Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## IV.    ANALYSIS

### A. The Section 1983 and NJCRA Claims Against NJDOC and EJSP Must Be Dismissed as They Are Immune From Suit and Are Not "Persons" Subject to Suit

The NJDOC and EJSP are immune from suit under the Eleventh Amendment of the Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).[2]

The Section 1983 and NJCRA claims against the NJDOC and EJSP must also be dismissed because the NJDOC and EJSP are not "persons" within the meaning of those statutes. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A State, agency, or an official of the State acting in his or her official capacity, is not a "person" within the meaning of Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 (1989). Prisons are also not considered "persons" under Section 1983. *Crawford v. McMillan*, 660 F. App'x 113, 116

---

[2] "[A] State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity[.]" *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002). However, it was Commissioner Kuhn, not the NJDOC or EJSP, who removed the case to federal court. "It is only when a State removes federal-law claims from state court to a federal forum that it submits its rights for judicial determination, and unequivocally invokes the jurisdiction of the federal courts." *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) (internal quotation marks and citation omitted).

(3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983."); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under Section 1983. Therefore, neither the NJDOC nor EJSP are "persons" subject to liability under Section 1983.

"The [NJCRA] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted [the] NJCRA analogously to § 1983. Therefore, the Court will analyze [Plaintiff's] NJCRA claims through the lens of § 1983." *Id.* "As with § 1983, New Jersey state courts have held that the State, its agencies, and state officials in their official capacities are not 'persons' within the meaning of the NJCRA and are immune from suit." *Baker v. Camarillo*, 2018 WL 1203473, at *3 (D.N.J. Mar. 8, 2018); *see also Gonzalez v. New Jersey Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 202 (D.N.J. 2021) ("The Third Circuit has thus concluded that the New Jersey Civil Rights Act does not provide a claim against the State of New Jersey or arms of the State . . . ."), *aff'd in part, appeal dismissed in part sub nom. Gonzalez v. New Jersey*, 2023 WL 3884114 (3d Cir. June 8, 2023). Therefore, neither the NJDOC nor EJSP are "persons" subject to liability under the NJCRA.

The Court will **DISMISS** *with prejudice* the Section 1983 and NJCRA claims against the NJDOC and EJSP. 28 U.S.C. § 1915A(b)(1)-(2).

### B.  Plaintiff Has Not Stated a Due Process Claim in Claim One

Plaintiff alleges Commissioner Kuhn denied him his due process rights when she "restrain[ed] Plaintiff's liberties that render[ed] him unable to care for himself based on his incarceration, more specifically seek[ing] medical care on his own . . . ." Am. Compl. ¶ 30.

Plaintiff has not stated a procedural due process claim and the substantive due process claim is barred by the more-specific-provision rule.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.* (internal citations omitted). Plaintiff argues that "Defendant Kuhn, by the affirmative exercise of her power, so restrains Plaintiff['ʼ]s liberties that renders him unable to care for himself based on his incarceration, more specifically seek medical care on his own, which is the deprivation of liberty triggering the protections of the due process clause." Am. Compl. ¶ 30.

"[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)." *Wilkinson*, 545 U.S. at 222. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id.* at 223 (quoting *Sandin*, 515 U.S. at 484). It is within the "ordinary incidents of prison life" that there will be restrictions on an inmate's access to medical care. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[P]risoners do not have a constitutional right to limitless medical care . . . .").

"The substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020). "[S]ubstantive due

process does protect a right to medical care.  Typically, substantive due process rights are invoked by pre-trial detainees and other nonconvicted persons seeking medical care who cannot invoke the Eighth Amendment."  *Cooleen v. Lamanna*, 248 F. App'x 357, 361 (3d Cir. 2007) (per curiam). However, "[u]nder the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  *Porter*, 974 F.3d at 447 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Here, as a convicted and sentenced prisoner, Plaintiff "can properly invoke the Eighth Amendment to challenge issues relating to his medical care.  The very viability of his Eighth Amendment claims means that his substantive due process claims are without merit . . . ."  *Cooleen*, 248 F. App'x at 362; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998); *Hunter v. Ibe*, 2020 WL 4013455, at *5 (D.N.J. July 16, 2020) (citing *Cooleen*).  Indeed, Plaintiff has alleged an Eighth Amendment violation in Claim Two.  Am. Compl. ¶¶ 32-35.

As Plaintiff has not alleged a procedural due process claim or a substantive due process claim, the Court will **DISMISS** Claim One for failure to state a claim.  28 U.S.C. § 1915A(b)(1).

### C.  Plaintiff Has Stated a Claim for Denial of Medical Care in Claim Two Against Dr. Galdhi

In Claim Two, Plaintiff alleges Defendants violated his Eighth Amendment right to medical care, resulting in "permanent physical damage and disfigurement of his left pectoral muscle in his chest."  Am. Compl. ¶ 33.  The Court will permit this claim to **PROCEED** in part.

       1. *Plaintiff has not alleged an Eighth Amendment claim against Commissioner Kuhn and the UMDNJ Director*

Plaintiff alleges that policies enacted by Commissioner Kuhn and the UMDNJ Director resulted in a denial of his Eighth Amendment right to adequate medical care. *Id.* ¶¶ 8-11. "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries. He may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

Plaintiff alleges the policies "place[] limitations and restrictions on medical care that is provided to NJDOC inmates . . . ." Am. Compl. ¶ 10. He states that he was denied the ability to cover treatment expenses himself, *id.* ¶ 14; have an MRI without NJDOC approval, *id.* ¶ 15; and denied access to a Patient Advocate, *id.* Restrictions on inmates' medical care are not *per se* unconstitutional, so Plaintiff cannot state an Eighth Amendment claim against Commissioner Kuhn and the UMDNJ Director merely by saying their policies restricted his medical care. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."). Rather, Plaintiff must allege "a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or

practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff has not alleged facts in the Amended Complaint that show how the policies created an unreasonable risk of an Eighth Amendment injury, that Commissioner Kuhn and the UMDNJ Director were aware of the unreasonable risk, or that his injuries directly resulted from the policies. *See Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) ("[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. … To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue."). Without such facts, the Court cannot plausibly infer that Commissioner Kuhn and the UMDNJ Director are liable for any Eighth Amendment violation. The Court will therefore **DISMISS** Commissioner Kuhn and the UMDNJ Director from Claim Two.

### 2. Plaintiff has not alleged an Eighth Amendment claim against Physician Lynch, APN Frimpong, RN Zuena, or Jane Doe 1

Plaintiff has not alleged an Eighth Amendment deliberate indifference claim against Physician Lynch, APN Frimpong, RN Zuena, or Jane Doe 1. To state an Eighth Amendment claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it's so obvious that 'a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003)). The Court assumes a pectoral muscle tear is a serious medical need for screening purposes only.

10

However, Plaintiff has not alleged that Physician Lynch, APN Frimpong, RN Zuena, or Jane Doe 1 were deliberately indifferent to that need.  The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 197).  Plaintiff alleges Physician Lynch examined him and concluded that he would need to be transported to an outside hospital.  Am. Compl. ¶ 6.  Plaintiff later states Physician Lynch "was responsible for making sure Plaintiff was promptly scheduled to receive the treatment he could not provide at EJSP.  Defendant Lynch's inactions resulted in permanent injuries." *Id.* ¶ 38.

This does not sufficiently allege deliberate indifference because the only pertinent facts in the Amended Complaint suggest that Physician Lynch recognized the severity of Plaintiff's injury and took steps to refer Plaintiff for further care.  *See Gaines v. Busnardo*, 735 F. App'x 799, 804 (3d Cir. 2018) (holding prisoner had not demonstrated deliberate indifference by nurse who scheduled prisoner for doctor visit because "[t]he actions taken . . . undisputedly indicate that she employed professional judgment and did not act with the 'obduracy and wantonness' necessary to sustain an Eighth Amendment violation").  Additionally, Plaintiff later states it was Dr. Galdhi who refused to schedule Plaintiff for follow-up appointments.  Am. Compl. ¶¶ 20-22.  The Court will therefore **DISMISS** Physician Lynch from Claim Two.

Plaintiff alleges APN Frimpong and RN Zuena were deliberately indifferent because they "treated Plaintiff in accordance with UMDNJ Hospital's and NJDOC's policies, practices and/or customaries [sic] that are rendered to forensic patients admitted to that facility." *Id.* ¶¶ 12-13. Plaintiff does not provide further facts about what specific actions APN Frimpong and RN Zuena

took pursuant to the policies that allegedly violated his rights.  The Court will therefore **DISMISS** APN Frimpong and RN Zuena from Claim Two.

Plaintiff alleges Jane Doe 1 "communicated with Plaintiff and expressed that due to UMDNJ Hospital's and NJDOC's policies, practices and/or customaries [sic] that are rendered to forensic patients admitted to their facility, that Plaintiff would not have the same rights afforded to other patients outlined in the UMDNJ's Patients Bill of Rights." *Id.* ¶ 14.  He asserts that Jane Doe 1 also told him that he would not be able to pay for treatment himself.  *Id.*  Plaintiff has not provided facts that support a plausible inference that Jane Doe 1 took specific actions that deprived Plaintiff of necessary medical care.  The Court will therefore **DISMISS** Jane Doe 1 from Claim Two.

### 3.  *Plaintiff has alleged an Eighth Amendment claim against Dr. Galdhi*

Plaintiff alleges Dr. Galdhi refused to schedule Plaintiff for follow-up appointments because Plaintiff submitted complaints about his treatment.  *Id.* ¶¶ 20-22.  If true, Dr. Galdhi delayed scheduling Plaintiff for an MRI for a non-medical reason, namely to retaliate against Plaintiff for filing complaints.  This could violate the Eighth Amendment.  *See Romero v. Ahsan*, 827 F. App'x 222, 227 (3d Cir. 2020) (finding a disputed issue of material fact on Eighth Amendment claim because doctor's statement that "complaining equals no surgery" suggested that grievances, not medical needs, influenced treatment decision).  The Court will therefore allow Claim Two to **PROCEED** against Dr. Galdhi.

### D. Plaintiff Has Stated a Medical Malpractice Claim in Claim Three Against Dr. Galdhi

Plaintiff brings state medical malpractice claims pursuant to the NJTCA in Claim Three. Am. Compl. ¶¶ 36-38.  Pursuant to New Jersey law, "[a] malpractice action is based on the improper performance of a professional service that deviated from the acceptable standard of

care." *Zuidema v. Pedicano*, 373 N.J. Super. Ct. 135, 145 (App. Div. 2004).  The Court will allow the NJTCA claim to **PROCEED** against Dr. Galdhi.  However, the Court will **DISMISS** the rest of the Defendants from Claim Three.

A plaintiff alleging medical malpractice must plead facts setting forth "(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury."  *Gardner v. Pawliw*, 150 N.J. 359, 375 (1997) (internal citations omitted).  The only action alleged to have violated the standard of care is Physician Lynch's failure to "prompt[ly] schedule" Plaintiff for treatment that could not be provided at EJSP.  Am. Compl. ¶ 38.  According to documents attached to the Amended Complaint, someone at EJSP called UMDNJ on July 16, 2021 and scheduled Plaintiff for "the first available appointment at that time. Which was September 22, 2021."  D.E. 7-1 at 17.  Additionally, Plaintiff later states it was Dr. Galdhi who refused to schedule Plaintiff for follow-up appointments.  Am. Compl. ¶¶ 20-22.  Plaintiff has not provided enough information to infer that Physician Lynch violated applicable standards of care.

### E. The Court Will Grant the IFP Application

Plaintiff submitted an IFP application as part of a motion to appoint *pro bono* counsel.[3] The Court will **GRANT** the IFP application.  The Court will not order the filing fee to be deducted from Plaintiff's account because Commissioner Kuhn paid the fee when the Complaint was removed from state court.  D.E. 1.

## V. CONCLUSION

For the reasons stated above, Claim One is **DISMISSED** *without prejudice* in its entirety. 28 U.S.C. § 1915A(b)(1).  The Court will **DISMISS** *with prejudice* the Section 1983 and NJCRA

---

[3] Magistrate Judge Andre M. Espinosa administratively terminated the motion pending this screening opinion.  D.E. 11.

claims against the NJDOC and EJSP.  28 U.S.C. § 1915A(b)(1)-(2).  Claims Two and Three shall

**PROCEED** against Balazs Galdhi only.  The Court will **GRANT** the IFP application.

     An appropriate Order follows.


**4/17/2024**
Date

*Evelyn Padin*
Evelyn Padin, U.S.D.J.

14